No. 54,685

State of Kansas, *Appellee,* v. Ivory L. Haislip, *Appellant.*

(673 P.2d 1094)

Opinion filed December 2, 1983.

*James D. Turner,* of Turner & Weilert, of Wichita, argued the cause and *Thomas J. Weilert,* of the same firm, was with him on the brief for the appellant.

*James E. Puntch,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Geary N. Gorup,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Herd, J.: This is an appeal from a conviction for murder in the first degree (K.S.A. 21-3401), and aggravated battery on a law enforcement officer (K.S.A. 21-3415). We reverse and remand for a new trial.

The facts reveal Officers Paul Garofalo and Randy Mullikin of the Wichita Police Department were on routine vehicular patrol in the early morning hours of November 8, 1980. At 3:30 a.m. they were proceeding west on 9th Street. Garofalo was the driver. They passed through the intersection of 9th and Washington and stopped one-half block west where they observed two black women and a man. They had a brief conversation with one of the women and then turned back to the east. They parked in front of an after-hours bar, the Chicken Shack. It is located on the second story of a building located on the northeast corner of 9th and Washington streets. A number of people had congregated on the sidewalk there.

The officers spoke to Regina Franklin and Krystal Butler. Both

women stood on the passenger side of the car and conversed through the open front window. Krystal was to the front and Regina to the rear of that window. Officer Garofalo was leaning from his position on the driver's side across Officer Mullikin to converse with the women. After a short conversation Mullikin heard a loud noise he thought was a car backfiring. The noise was a shotgun blast fired twice at close range into the head and back of Officer Garofalo through the car window on the driver's side. A few stray pellets hit Mullikin's leg.

After the second shot Mullikin rolled out of the car and sought cover. When he looked back he saw people running but no gunman. He returned to the car and radioed the dispatcher for help. Officer Garofalo lay in the driver's seat, his head tilted back, bleeding profusely. With the help of a person identifying himself as a paramedic, Mullikin lowered Garofalo from the car to the pavement outside the car where they attempted to administer C.P.R. There were no vital signs. At this time Mullikin observed a shotgun lying beside the car. He picked it up and placed it in the car.

Officer Pete Dubovich and other officers arrived at the scene shortly thereafter. They observed Officer Mullikin, who was wounded and appeared in shock. Dubovich took charge and secured the area. In so doing he discovered a pool cue case lying on the north curb just to the east of Washington Street. He told a rookie policeman to guard it.

Next Dubovich observed a black man, later identified as Dale Jackson, standing beside Paul Garofalo, together with Larry Mitchell, the person who claimed to be a paramedic. Officer Dubovich authorized Mitchell to assist. The ambulance arrived. Officer Garofalo died from the shotgun wounds to the back of his head.

While Officer Dubovich was busy sealing off the area and doing preliminary investigative work, he forgot about the pool cue case. At trial he testified he felt it was safe with the rookie standing guard. He returned an hour or two later to discover both the pool cue case and the rookie gone. The case was subsequently found a block away on Washington Street. Officer Dubovich saw Anthony Ray Martin at the scene among the crowd which gathered after he arrived.

Officer Mullikin informed the policemen that an individual in

a white three-piece suit (Dale Jackson) had information about the crime. Jackson was taken to the City Building for interrogation. After he was promised protection and discussed the matter with his girlfriend, Jackson stated Ivory Haislip was the person who shot Officer Garofalo. Jackson had made prior inconsistent statements.

Mullikin also identified Ivory Haislip as the man he and Garofalo had seen one-half block west prior to the shooting. His first description of the man was inconsistent with Haislip's actual appearance.

Regina Franklin, one of the women talking to the officers when the shooting occurred, talked to the police the next day. She picked Haislip's photograph out of a group when she was directed to pick out the killer.

At 4:30 a.m., November 9, 1980, Ivory Haislip was arrested for the murder of Officer Garofalo.

Police later were informed Haislip went to the home of Dorothy Jones and Hubert Jeffries late on the Saturday night of the shooting. They stated he appeared high and when Ms. Jones mentioned the killing of the officer, Haislip said, "I did it." Neither of them believed him.

The clincher in the case against Haislip was the statement of Anthony Ray Martin. Martin had been picked up by the police on December 11, 1980, on other matters but was interviewed by the district attorney about the Garofalo homicide. Martin identified Haislip as the murderer. He was not held on the charges for which he was picked up. Martin had previously told the police he saw the man with the pool cue case with the gun but did not see his face.

The case against Haislip appeared airtight, particularly to the prosecutor's office because at that time nothing was known of a statement of police informant Al Bowens to the police which would later introduce a new element into the case. The prosecutor did not hear of Bowens' statement until December 28, 1981.

Bowens gave a taped statement to the police department on November 11, 1980, and a second statement two days later. He told the detectives he was driving west on 9th Street at about 3:30 a.m. November 8, 1980, and saw Anthony Ray Martin walk across the street in front of his car. He stated Martin was carrying

a pool cue case with the butt end of a gun sticking out of it. Bowens turned right and parked in a church parking lot. He discussed what he saw with the two people who were riding with him. As he assisted the person in the back seat in getting out of his two-door car, he heard a gunshot and looked toward its source at the parked police car. Bowens saw Martin there and then saw Martin throw something down and run northeast in front of Bowens' car again. The police officers gave the statements no credence and told Bowens it was impossible for him to have seen what he saw. The tapes did not again emerge for over a year.

With that battery of witnesses minus Al Bowens, Ivory Haislip was tried and convicted of murder in the first degree and aggravated battery of a law enforcement officer on May 15, 1981.

Haislip filed a motion for a new trial. In the hearing on the motion on June 9, 1981, new evidence was produced. Krystal Butler, one of the women talking to the officers at the time of the shooting, and Clementine Gasper, a spectator on the sidewalk at the time, testified they saw Anthony Ray Martin kill the officer. The motion was overruled. Haislip was sentenced to life and fifteen years to life to run concurrently.

Haislip appealed his conviction and filed his second motion for a new trial with this court. We remanded the case to the trial court for a hearing on his claim of newly discovered evidence. Eleven witnesses testified for Haislip. Six of them testified they saw Martin shoot the officer. Regina Franklin recanted her previous testimony identifying Haislip as the murderer. On October 30, 1981, a new trial was ordered and set for December 7, 1981.

The granting of the new trial caused the State to start a completely new investigation of the case. Initially one hundred seventy-five witnesses were endorsed on the information by the State. The list eventually grew to over two hundred witnesses. The volume of evidence to be reviewed consisted of reports, statements and prior testimony. The task was staggering. The State asked for and received a continuance of the trial from December 7 to January 11, 1982. Haislip objected.

Finally, on December 28, 1981, the prosecutor was informed of Al Bowens' two taped statements with regard to Anthony Ray Martin's involvement. The district attorney had given no cre-

dence to the testimony of Haislip's witnesses in the hearings on the two motions for a new trial. Only after hearing the Bowens statements did suspicion seriously focus on Martin, and then with much skepticism. On January 8, 1982, the State charged Martin with the identical offenses as Haislip. On January 11, 1982, the State again asked for a continuance, this time for one week. It was granted over Haislip's objection. After an oral motion to consolidate the two cases was denied, on January 14, 1982, the cases against Haislip and Martin were dismissed without prejudice and one case instantaneously filed against both of them. The charges were identical to those in the original case against Haislip.

The next procedural development in the case was the filing of Anthony Ray Martin's motion for a bill of particulars on January 22, 1982, which the State furnished on February 5. The bill charged Haislip as principal and Martin as aider and abettor.

Haislip filed a motion on January 29, 1982, to dismiss the action against him alleging he had not been brought to trial within the ninety-day speedy trial requirement of K.S.A. 22-3402. The motion was overruled.

Haislip then filed a motion for severance of the trials. It was also overruled.

The final pretrial motion was for a change of venue. It was also overruled.

The trial commenced on April 19, 1982. It lasted until May 29, 1982. Haislip was convicted as charged. After a motion for a new trial was overruled, this appeal followed.

Appellant Ivory Haislip first argues the trial court erred in refusing to dismiss the charge against him due to the State's failure to comply with K.S.A. 22-3402, the speedy trial statute.

Haislip was granted a new trial October 30, 1981. He was incarcerated at the time and continued to remain in jail. The ninety-day time clock under K.S.A. 22-3402 was thus triggered. *State v. Grimes*, 229 Kan. 143, 144, 622 P.2d 143 (1981). Trial was first set for December 7, 1981, then was continued to January 11, 1982, on the State's motion, over the objection of Haislip. On January 11, the State appeared and requested another continuance, again over Haislip's objection. Anthony Ray Martin had been charged on January 8, 1982, with the same offenses as Haislip. The State discussed with the court joining the two cases

for trial due to the problems of proof inherent in separate trials. Upon the court's indication it would not permit such joinder, the State dismissed both cases and immediately filed a new case charging Haislip and Martin together. At that time seventy-six days had transpired since the new trial was granted. The State's theory was that upon the filing of the new case on January 14, it had ninety additional days. On January 29, Haislip filed his motion to discharge for failure to bring him to trial within ninety days. The court overruled the motion. Haislip and Martin were arraigned February 8, 1982. The trial commenced April 19, 1982, one hundred seventy-one days after Haislip was awarded a new trial, but within ninety days of the joint arraignment.

We held in *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 278, 589 P.2d 626 (1979), "Absent a showing of necessity, the State cannot dismiss a criminal action and then refile the identical charges against the same defendant and avoid the time limitations mandated by the statute." Hence, the issue is whether the State made an adequate showing of necessity to the trial court when the case against Haislip was dismissed without prejudice and refiled. If adequate necessity was shown, the time chargeable to the State in the previous case would not be combined with the time elapsed under the new filing. Otherwise Haislip is entitled to discharge.

Appellee, citing *State v. Fink*, 217 Kan. 671, 538 P.2d 1390 (1975), argues there is no need to show necessity. In *Fink* we stated, "The time elapsing between the filing of the first information and the dismissal of the cause by the court is not to be counted in determining the time elapsed between the filing of the second information and trial." 217 Kan. at 675. The holding in *Fink* is correct but inapplicable to the facts here. It does not deal with whether a prosecutor's dismissal was necessitous but rather with when the counting begins for the speedy trial statute. The dismissal in *Fink* was prior to arraignment and pursuant to appellant's motion.

In absence of an adequate showing of necessity this court requires the aggregate time in both cases to be counted in testing the speedy trial requirement. In *Cuezze*, the leading case on this issue, the State dismissed charges against two defendants and refiled identical charges but added a third conspirator. The dismissal came three months after the State had heard evidence

implicating the third conspirator. The necessity claimed by the State was the complexity of the case. We held the State failed to show necessity and thus could not avoid the time limitations of K.S.A. 22-3402. Of particular importance to the *Cuezze* rationale was the State's failure to apply for a continuance pursuant to K.S.A. 22-3402(3)(*c*). The Court of Appeals found the same omission controlling in *State v. Hunt,* 8 Kan. App. 2d 162, Syl. ¶ 3, 651 P.2d 967 (1982):

"The State cannot avoid the statutory speedy trial time limits by dismissing an information and subsequently refiling the charges. The proper procedure for the State to follow is to obtain a continuance pursuant to K.S.A. 22-3402(3)."

K.S.A. 22-3402(3) provides:

"The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

"(*a*) The defendant is incompetent to stand trial;

"(*b*) A proceeding to determine the defendant's competency to stand trial is pending and a determination thereof may not be completed within the time limitations fixed for trial by this section;

"(*c*) There is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days. Not more than one continuance may be granted the state on this ground, unless for good cause shown, where the original continuance was for less than ninety (90) days, and the trial is commenced within one hundred twenty (120) days from the original trial date;

"(*d*) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

In the case at bar, the provisions of the foregoing statute do not meet the needs of the State. The case against Haislip was dismissed and refiled to afford a method of trying both suspects together since the court refused to join the two cases for trial. A continuance pursuant to K.S.A. 22-3402(3) could not have accomplished that result. Thus, unlike *Cuezze* and *Hunt* a request for a continuance was not required.

There is no evidence the State was attempting to manipulate the speedy trial requirement. The statements of Al Bowens implicating Anthony Ray Martin in the murder of Officer Garofalo were not available to the prosecutor's office until December 28, 1981. The statements of Haislip's witnesses at the hearings on motions for a new trial implicating Martin were not taken as

credible evidence by the State due to failure of the witnesses to come forward at Haislip's first trial and their prior inconsistent statements. In light of the timing of the discovery of Bowens' statement, and a controversy between the suspects as to which should be tried first, the prosecution, in good faith, concluded the trials of Haislip and Martin should be joined. This resulted in a need for extensive additional investigation of the case. We find there was adequate showing of necessity for dismissal and refiling of this case at that time, even though the trial later disclosed antagonistic defenses which prejudiced Martin. Under these particular circumstances Ivory Haislip's statutory speedy trial rights were not violated.

Haislip next claims his constitutional right to speedy trial was also violated.

Kansas has adopted the test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), for judging constitutional speedy trial claims. See *State v. Otero*, 210 Kan. 530, 502 P.2d 763 (1972). *Barker* established a balancing test with four factors to be considered when a claim of unconstitutional denial of speedy trial is asserted. The four factors are: length of delay, the reasons for delay, the defendant's assertion of his right to speedy trial, and the prejudice resulting to the defendant. None of these factors alone is dispositive. They must be considered together.

The length of the delay in this case, which is the first factor, was six months from the granting of a new trial in October 1981, until the actual trial in April 1982. It had been seventeen months from appellant's initial arrest in November 1980 to trial in April 1982. This court has held longer times not to constitute a violation of a defendant's right to speedy trial. See *State v. Wilson*, 227 Kan. 619, 608 P.2d 1344 (1980) (three years), and *State v. Hemminger*, 210 Kan. 587, 502 P.2d 791 (1972) (five years).

The second factor is the reason for delay. Haislip argues the reasons for the delay by the State in this case were political pressure and gain of tactical advantage. Appellee argues it was due to the late development of important evidence, namely the newly discovered testimony of Al Bowens. Appellee's argument is supported by the record and is persuasive.

A defendant's assertion of his right is the third factor to be considered. Haislip argues he never requested a continuance

and was prepared to go to trial as scheduled. Appellee points out, however, that Haislip did not raise the speedy trial issue until January 29, 1982, one year and two months after his arrest and three months after a new trial was ordered. Although it is not mandatory for Haislip to assert his right to trial (*Barker*, 407 U.S. at 528), the failure to do so makes it difficult for him to prove that he was denied his constitutional right. *Hemminger*, 210 Kan. 587, Syl. ¶ 4. Similar long delays have been held to weigh against a defendant's assertion of the right on appeal. See *State v. Wilson*, 227 Kan. 619; *State v. Hunt,* 8 Kan. App. 2d 162.

The final factor is the prejudice to the appellant by the long delay. Haislip argues he was prejudiced since the result of the delay was to require him to be tried with Martin. This is not a prejudice which is the result of the delay between arrest and trial.

Haislip also argues he was prejudiced because three witnesses could not be located for the second trial. The unavailability of witnesses has been held to be a factor prejudicing the defendant. *Hemminger*, 210 Kan. at 594. In this case, however, Haislip did not try to locate the witnesses, no subpoenas were issued, and there was no showing they would have been available for an earlier trial. No prejudice is shown. This issue is without merit.

Haislip next argues the trial court erred in not instructing the jury it could acquit Haislip and convict Martin. Haislip requested the following instruction:

"You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.

"All evidence produced tending to show that the defendant Anthony Ray Martin personally fired the shots which killed Paul Garofalo and wounded Randy Mullikin may only be considered as it relates to the question of whether or not Ivory Haislip committed the crimes with which he is charged.

"The testimony of Anthony Ray Martin may only be considered as it relates to the question of whether or not he is criminally responsible for the crimes committed by some other person, and may not be considered in determining whether or not Ivory Haislip committed the crimes with which he is charged."

The court gave the first paragraph of the requested instruction but refused Haislip's request to give the rest. We have held error cannot be predicated on refusal to give a specific instruction where the instruction given covers the substance of the request. *State v. Taylor*, 212 Kan. 780, Syl. ¶ 2, 512 P.2d 449 (1973). We find no error since the instruction given summarized the entire

requested instruction. However, the court gave the following instruction on aiding and abetting:

"A person is criminally responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime.

"You are further instructed in this case that if you find beyond a reasonable doubt that the defendant, Anthony Ray Martin, intentionally counseled, aided, abetted, advised or in any manner assisted Ivory Haislip in the commission of the crime or crimes charged in the information, as elsewhere defined in these instructions, then he, individually, is guilty of such crimes as though he, by himself, without assistance, committed those crimes."

Haislip made a contemporaneous objection to this instruction, which was overruled. We find the trial court erred in failing to sustain Haislip's objection. Giving the foregoing instruction left the jury no option but to convict Ivory Haislip if it found Anthony Ray Martin guilty. The stronger the case against Martin, the more certain Haislip would be convicted. The instruction should have stated if Martin "aided, abetted, advised or in any manner assisted Ivory Haislip *or others*" then he is guilty. It should also be pointed out the State's evidence is consistent with the suggested change. There was no evidence Martin knew Haislip or that he handed him the murder weapon. There was evidence Martin possessed the shotgun shortly before the shooting, that he approached the police vehicle, then ran after the shots. He could have aided and abetted others in the shooting.

The jury's action during deliberations substantiates our conclusion. The jury foreman presented the following question to the trial court: "If we find Haislip not guilty can we find Martin guilty of (a) aiding and abetting; (b) first degree murder?" The court responded, "Please refer to instructions." Thus, the erroneous instruction was reemphasized. The jury then returned to deliberate and convicted both appellants. The clearly erroneous instruction is so prejudicial to Ivory Haislip it requires a new trial for him.

Haislip raised other issues all of which were considered by this court, but since the foregoing issue requires a new trial we need not discuss them.

The judgment of the trial court is reversed and the case remanded for a new trial.

LOCKETT, J., not participating.

SCHROEDER, C.J., and PRAGER, J., concur in the result.