No. 54,705

STATE OF KANSAS, *Appellee,* v. ANTHONY R. MARTIN, *Appellant.*

(673 P.2d 104)

Opinion filed December 13, 1983.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, argued the cause and was on the brief for the appellant.

*James E. Puntch, Jr.,* assistant district attorney, argued the cause and *Geary N. Gorup,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal from a conviction for murder in the first degree (K.S.A. 21-3401), and aggravated battery on a law enforcement officer (K.S.A. 21-3415). The victims of the crime were both police officers of the City of Wichita. Anthony Ray Martin (defendant-appellant), along with Ivory Haislip, a codefendant, were both convicted of the aforementioned crimes by a jury in a joint trial. Anthony Ray Martin appealed from his conviction of these offenses as an aider and abettor.

The facts material for a review of this appeal are adequately stated in *State v. Haislip,* 234 Kan. 329, 673 P.2d 1094 (1983).

When the entire scenario of this case, stemming from the

initial incident when Officer Garofalo was shot to the joint trial here for review, is viewed in retrospect, it discloses numerous errors committed in the course of investigation and prosecution. Our opinion will be confined to one major point which controls the disposition of this case.

A majority of the members of this court find that both Anthony Ray Martin and Ivory Haislip were so prejudiced by a joint trial that they were deprived of their right to a fair trial. We reverse and hold that the trial court should have granted the defendants' motions for severance and tried each defendant separately. Most of the other errors asserted on appeal stem from rulings caused by the joinder of Martin and Haislip in one trial.

The granting of separate trials of codefendants lies within the sound discretion which the trial court has the power to exercise. *State v. Myrick & Nelms,* 228 Kan. 406, 416, 616 P.2d 1066 (1980). See also K.S.A. 22-3204. This court has held on many occasions that two or more defendants may be joined and tried together:

"(1) when each of the defendants is charged with accountability for each offense included, or (2) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) when in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place and occasion that proof of one charge would require proof of the others." *State v. Roberts,* 223 Kan. 49, 55, 574 P.2d 164 (1977).

If the foregoing requirements are met, joinder is proper, subject to a showing of prejudice to either defendant by the joinder. In determining whether there is sufficient prejudice to mandate severance, this court has considered the following factors:

"The usual grounds for a severance are: (1) that the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) that evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) that a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants." 75 Am. Jur. 2d, Trial § 20.

See also *State v. Cameron & Bentley,* 216 Kan. 644, 649, 533 P.2d 1255 (1975).

Finally, the trial court must remember in exercising its power of discretion that "[a]lthough a single trial may be desirable from the standpoint of economical and efficient criminal procedure, the right of a defendant to a fair trial must be the overriding consideration." *State v. Sully,* 219 Kan. 222, 224, 547 P.2d 344 (1976).

In examining the factors compelling separate trials, the appellant and Haislip each argued his defense was antagonistic to that of the other, hence severance should have been allowed. The "classic case" of an antagonistic defense was held to be "where each of two defendants was trying to blame the other while trying at the same time to defend against the prosecution . . . ." 219 Kan. at 225. In *Sully,* the court did not find the codefendants had antagonistic defenses, since the appellant argued only that he was present at the murder but the other defendant fired the fatal gunshot. The court stated the defenses were not "inconsistent" nor "intrinsically antagonistic." 219 Kan. at 225. A similar case was *State v. Myrick & Nelms,* 228 Kan. 406. In *Myrick* the court again held the codefendants did not make a sufficient showing of antagonistic defenses. There both defendants were accused of being the trigger man. The court held this was immaterial since they *acted together* to commit the crime and were both charged as principals.

Antagonistic defenses were reviewed by the Fifth Circuit Court of Appeals in *United States v. Sheikh,* 654 F.2d 1057 (5th Cir. 1981), *cert. denied* 455 U.S. 911 (1982). The court stated:

"The existence of antagonistic defenses among codefendants is cause for severance when the defenses conflict to the point of being irreconcilable and mutually exclusive." 654 F.2d at 1065.

The court emphasized the essence of each codefendant's defense.

The appellant was convicted of the crimes charged as an aider and abettor. His codefendant, Ivory Haislip, was convicted of the crimes as the principal. The appellant contends in substance that the testimony of witnesses called by Haislip as part of his defense, who were not called as prosecution witnesses, was so prejudicial to him to deprive him of his right to a fair trial. We agree.

At the time the State rested its case at the joint trial of the defendants the only evidence linking Martin to the shooting was

testimony that Martin was seen shortly before the shots were fired carrying a pool cue case with a gun protruding out of it. The evidence disclosed Martin was seen throwing something to the ground and running away from the scene immediately after the shooting. Further evidence disclosed fibers from the shotgun picked up at the scene had the same characteristics as fibers taken from the pool cue case. The State did not call any witnesses who testified they saw Martin do the shooting. Martin testified he saw Haislip shoot Officer Garofalo. No evidence was introduced that Martin handed the pool cue case or the gun to Haislip or that the two planned the shooting. Had the case against Martin been submitted to the jury at that time it is possible the jury may have reached a different conclusion on the issue of whether Martin supplied Haislip with the gun to shoot Officer Garofalo, which was the State's theory stated in its bill of particulars concerning Martin's involvement. There is no evidence in the record that Martin or Haislip knew each other or associated with each other in any way whatever.

The testimony of Haislip's defense witnesses, presented to the jury prior to the submission of the issue of Martin's guilt to the jury, was prejudicial to Martin for several reasons. Haislip's witnesses testified they saw Martin shoot Officer Garofalo. The State, attempting to prove the charges against Martin, was entitled to cross-examine these witnesses by leading questions to establish Martin's involvement as an aider and abettor. The trial court refused to instruct that the evidence tending to show Martin personally fired the shots could only be considered as it related to the questions of whether or not Haislip shot Officer Garofalo. It would be incredulous to believe the jury did not consider the testimony of Haislip's witnesses in determining Martin's guilt or innocence on the charge of aiding and abetting. The jury was not specifically instructed that Martin could have been convicted of only aiding and abetting. If the jury believed, based on the testimony of Haislip's witnesses, that Martin actually did the shooting, it is probable they would have found him guilty of the charge of aiding and abetting, rather than acquit him. Had Martin been tried separately the record suggests the State would not have called Haislip's witnesses as prosecution witnesses against Martin, because the State was committed to its

bill of particulars, and the likelihood of acquittal would have been much greater.

Haislip was also prejudiced by the joinder of the trials in several respects. Martin, of course, was entitled to cross-examine Haislip's witnesses who identified Martin as the killer. Martin was therefore placed in the position of assisting the State in proving Haislip committed the crime. Haislip was also prejudiced by the inadmissibility of the prior in-court testimony of Veronda Finley on the ground that Martin would not have the opportunity for cross-examination. Veronda Finley testified on Haislip's behalf at his motion for a new trial. The essence of her testimony was that two of the witnesses who had implicated Martin as the murderer told her of Martin's involvement the day after the shooting. Finley could not be located to testify at the joint trial here on review.

Had Haislip been tried separately, Finley's prior in-court testimony would have been admissible. This testimony was important to Haislip's defense to bolster the credibility of the witnesses who identified Martin as the killer. The State attempted to imply those witnesses who identified Martin as the killer fabricated their stories, after Haislip was convicted on the first trial, to assist in Haislip's defense and because of their personal animosity toward Martin. The testimony of Veronda Finley would have contradicted this implication and placed Martin's testimony in further doubt.

Ordinarily joinder of trials becomes impermissibly prejudicial only when one of the codefendants must have committed the crime and each points his finger at the other. As this case demonstrates, a narrow construction of the "intrinsically antagonistic" exception to the practice of joinder does not adequately protect defendants from inherent prejudice resulting from joinder in cases similar to the one at bar, and deprives such defendants of their fundamental right to a fair trial.

The conviction of Martin, the appellant herein, is reversed with directions to grant him a separate new trial.

LOCKETT, J., not participating.

HERD, J., dissenting: I would not remand this case for a new trial. The basis for a new trial is the refusal of the trial court to sever Martin's trial from that of Ivory Haislip. It is axiomatic that a defendant seeking trial severance bears the burden of proof. Martin did not sustain his burden. At the time of the court's

ruling on the motion there was no showing of prejudicial antagonistic defenses. The prejudice was revealed during the trial as stated by the majority. Since the conditions present at the time the motion is considered are controlling, the trial court did not abuse its discretion in denying the motion to sever the trials. See *United States v. Ready,* 574 F.2d 1009, 1015 (10th Cir. 1978); *State v. Myrick & Nelms,* 228 Kan. 406, 416-17, 616 P.2d 1066 (1980); and *State v. West,* 2 Kan. App. 2d 297, 299, 578 P.2d 287 (1978).

In addition, the evidence against Martin is so overwhelming a new trial has no chance of producing a different result. At least six eyewitnesses identified Martin as the gunman who shot Officer Garofalo. Bowens, the police informer, and his party saw Martin approach the police car that evening carrying a shotgun, heard the gunshots and saw Martin throw down an object and run away. In view of the testimony concerning Martin's participation in the incident and the overall weight of evidence against him, the failure to sever was not reversible error. See *State v. McQueen & Hardyway,* 224 Kan. 420, 426, 582 P.2d 251 (1978).

I would affirm the trial court.

McFARLAND, J., joins the foregoing dissenting opinion.