No. 56,934

State of Kansas, *Appellant,* v. Anthony Ray Martin, *Appellee.*

(699 P.2d 486)

Opinion filed May 10, 1985.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellant.

*Charles A. O'Hara,* of O'Hara, O'Hara & Tousley, of Wichita, argued the cause, and *Ernest L. Tousley,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by the State on a question reserved from the trial of Anthony Ray Martin for murder in the first degree, K.S.A. 21-3401, and aggravated battery of a law enforcement officer, K.S.A. 21-3415. Martin was acquitted. The facts relating to the homicide and shooting are stated in *State v. Haislip,* 234 Kan. 329, 673 P.2d 1094 (1983), and in *State v. Martin,* 234 Kan. 548, 673 P.2d 104 (1983), in which this court remanded both cases for new trials. Only that portion of the facts necessary for resolution of the question on appeal will be restated here. Upon remand, the trials of these codefendants were severed as directed by this court and the defendants were retried separately. The codefendant, Ivory Haislip, was again convicted, and his appeal from the conviction is currently pending before this court.

In the prior joint trial with Ivory Haislip, where both were convicted, the State filed a bill of particulars, upon request of Martin, wherein it stated the prosecution's theory of the case was that Anthony Ray Martin aided and abetted Ivory Haislip in killing officer Paul Garofalo by providing Haislip with the gun. The prosecution again relied on the same theory in the second trial of Anthony Ray Martin and left the bill of particulars on file. This renders irrelevant the eyewitness testimony that Martin was the triggerman.

At the new trial of Martin, Officer Randy Mullikin testified he found the murder weapon, a .20-gauge shotgun, laying abandoned beside the police automobile in which he and Officer Garofalo were riding. He picked it up and placed it in the car and locked the car for safekeeping.

Other police quickly responded to the radio calls for assistance. Officer Peter J. DuBovich was the first to arrive. In securing the area, he discovered a pool cue case. He left it under the

care of a rookie policeman. It disappeared and was later found about a block away on Washington Street. It was subsequently learned that Anthony Ray Martin picked up the pool cue case and moved it. This was learned from his statement to the police which was not admitted into evidence in the second trial. Officer DuBovich also testified he saw Martin at the crime scene shortly after he arrived. He said, "He [Martin] was standing at the north curb of Ninth, just to the east of the front bumper of the green pickup truck, and he was pretty jovial, clapping his hands, jumping up and down, and laughing."

State's witness Al D. Bowens testified he was driving west on Ninth Street in Wichita in the early morning hours of November 8, 1980. He had two passengers in his car, Diana Jenkins and her brother, Greg Jenkins. When they arrived at a point between Wabash and Washington on Ninth, he observed Anthony Ray Martin crossing from the south side of the street to the north side in front of Bowens' car, forcing him to stop and let Martin pass. Martin was carrying a pool cue case in his right hand. He testified he observed the butt end of a shotgun protruding from the pool cue case. Bowens then proceeded to park his car in a church parking lot close by and continued to observe Martin. While Bowens was bent over to help the rear seat passenger from his car, he heard a couple of shots and saw Martin running from the area where the shots originated and also saw Martin throw away a three foot long object which later proved to be the pool cue case. Martin proceeded to run from the area in a northeasterly direction again passing directly in front of Bowens' car. When Martin arrived at an alley he crouched low as if to hide. Bowens then left the area.

The State introduced expert testimony to show that the fibers from the pool cue case and the fibers from the butt of the murder weapon were from a common source, indicating the shotgun had been in the pool cue case.

Prior to Martin's retrial, he filed a motion to admit the results of two prior polygraph examinations he had taken. Martin also filed a proposed stipulation by which he agreed to submit to a third polygraph test to be performed by a "neutral examiner from another jurisdiction and another state who has no knowledge concerning this matter" and make the results of such an examination admissible at trial. The prosecution objected to the ad-

missibility of any polygraph results. The trial court's ruling on this issue is the question reserved.

During the trial, a hearing was held outside the presence of the jury to determine the admissibility of prior inconsistent statements made by Martin to the police. Martin gave four separate statements. The first three statements were given to Detective Goseland on November 25, 1983. After the third statement, Martin submitted to a polygraph examination, which he failed. On the following day he gave a fourth statement. His final statement was that prior to the shooting he was on the south side of the street by Smart's Restaurant. He saw a police car drive by heading west on Ninth Street. He crossed the street northbound, to the church. He walked across to the church lot. As soon as he got on the curb he saw a person walking west along the north curb. He walked up behind the person and saw the person was holding a pool cue case. As he got behind the person he saw the individual pull a shotgun out of the pool cue case, throw the case on the ground by a tree and walk toward the direction of the police car. He walked over to the pool cue case, considered stealing it, and was looking at the case when he heard shots fired. He then became scared, dropped the case, and ran in a northeasterly direction. He stated at the time the shots were fired he looked up and saw the assailant turn toward his direction. He looked at him, and the person walked in a northwesterly direction. Martin passed a Wichita Police Department and a Kansas Bureau of Investigation polygraph exam with this statement.

In considering the admissibility of these four separate statements, the trial court held they were so inconsistent with one another that "[to] allow these series of statements to go to the jury . . . would make the defendant appear as though he was a habitual liar . . . [who] would change his story from time to time." Martin claims the inconsistent statements were caused by the polygraph tests. From this the court reasoned the statements and polygraph tests were so closely related that even though the statements were admissible, the court would exclude them unless the State would agree to allow the jury "to hear entirely and clearly what happened to this defendant and the results of those polygraph examinations." The State refused to stipulate to the admission of the polygraph. Thus, Martin escaped having his four inconsistent statements admitted into evidence.

Martin's defense consisted of attacking the credibility of the State's witnesses. He did not take the stand. The State again attempted to get Martin's statements, in which he admitted being at the scene of the crime, admitted as rebuttal evidence. The trial court again refused to admit the statements as rebuttal without the admission of the polygraphs, finding that since Martin had not claimed an alibi, the statements were not proper rebuttal testimony. The State's case was successfully destroyed.

The appellee was acquitted. The State appeals on a question reserved.

Appellant initially argues the trial court abused its discretion by requiring the State to agree to the admission of the polygraph examinations if the State insisted on entering defendant's prior inconsistent statements.

A trial judge has discretion to exclude evidence when its probative effect is outweighed by its prejudicial effect on the jury. See *State v. Richard,* 235 Kan. 355, 362, 681 P.2d 612 (1984). Appellant initially argues the trial court abused its discretion because its ruling denied the State the ability to corroborate its witnesses with Martin's own statements and allowed appellee to present a defense safe from his prior inconsistent statements. The effect of such a ruling, appellant argues, will be that defense counsel will now "parade his defendant before a series of polygraph operators until the defendant eventually passes an examination on a defensible story." Armed with this polygraph-proved story, appellant argues, judges will then be required to exclude prior confessions. The State will then be put in a position where it is required to agree to the admission of the story which passed the polygraph test and the results of the test, along with every inculpating statement of an accused. As the judge ruled in this case, the State will automatically be put in a position to choose based on the argument that the State is trying to exclude "the truth."

Appellee argues the trial court did not abuse its discretion in forcing the State to agree to the admission of the defendant's prior inconsistent statements only if the information concerning the polygraph statements was also admitted. Appellee argues the issue is not a "polygraph issue" but rather is a "voluntariness of statements issue." The police detective admitted Martin was

given the polygraph examinations to test the credibility of his third story, which he did not believe. Thus, while appellee made prior inconsistent statements, he was challenged to prove the truth of statements by the police department's use of the polygraph. Hence, appellee argues, admitting the inconsistent statements without also admitting the polygraph examination evidence, which was the reason Martin changed his statement, would be so prejudicial to him that the otherwise admissible statements must be excluded. This reasoning is hard to follow. A polygraph test always comes either as a challenge by law enforcement to prove or disprove the truth of a statement or by an accused to prove he is telling the truth. Yet this court has consistently found polygraph examinations so unreliable they are inadmissible. The facts in this case, therefore, are not unusual.

The scope of appellate review is whether the trial court's ruling was an abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. All judicial discretion must thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds. See *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Anthony Ray Martin gave three inconsistent statements to Officer Goseland before the taking of a polygraph was suggested. Those statements are unquestionably admissible. They were free and voluntary and made after the *Miranda* warning was administered. Martin's fourth version of his activities on the night of the murder was made after he took a polygraph test, a test he voluntarily took to try to prove the truth of his third statement. He was advised he had failed the test. Martin then opted to try again. The statement he gave withstood the rigors of the second polygraph test. Now he argues the statement he made was not voluntary because he was asked if he would be willing to take a polygraph test to prove its truth. There is no evidence of coercion. Martin was not forced to take the polygraph tests. He

chose to do so for his own benefit. We hold his inconsistent statements are admissible independent of the polygraph results. We have held polygraph tests are too unreliable to be admissible and that they tend to invade the province of the jury in determining the ultimate question of fact: whether a witness is speaking the truth. *State v. Blosser*, 221 Kan. 59, 558 P.2d 105 (1976). The trial judge correctly concluded the jury would think Martin was a habitual liar if they heard all of his inconsistent versions of his actions on November 8, 1980. And well they might, because Martin was a liar and obviously involved in the crime. The jury had a right to know that in determining the facts of this case. The jury was denied that essential information. We conclude the four inconsistent statements of the appellee should have been admitted into evidence and the trial court abused its discretion in making admissibility of the statements dependent upon also admitting the polygraph results.

Appellant next argues the trial court erred in refusing to permit the State to introduce the defendant's pretrial statements in rebuttal.

The defense presented by appellee consisted of attacking the credibility of the witnesses who placed him at the scene of the crime and carrying the pool cue case. The State contends this defense constituted "an affirmative denial of the elements of the defendant's identification and participation in the crime." The State therefore moved at the close of the case to present rebuttal evidence by way of Martin's previous statements in which he admitted being at the scene, admitted witnessing the murder, and admitted handling the pool cue case. The trial court denied the admissibility of this rebuttal evidence relying on defense counsel's assurances that the defense was not relying on an alibi and would not take unfair advantage of the situation.

In defendant's closing argument, his counsel argued there was no reliable evidence placing defendant at the scene of the crime or in contact with the pool cue case. The State did not object to these statements, contending it feared to draw attention to the argument.

The rules regarding rebuttal evidence were stated in *State v. Weigel*, 228 Kan. 194, Syl. ¶ 9, 612 P.2d 636 (1980):

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented

evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice."

Appellant argues the statements were admissible rebuttal evidence since the introduction of such evidence would have reduced the prejudice of the closing argument by defense counsel, which was inconsistent with defendant's pretrial admissions, and such evidence would have corroborated the testimony of the prosecution witnesses whose credibility was attacked by defense counsel.

Appellee argues the statements were not proper rebuttal evidence because the defense did not present an alibi. It is true appellee did not put on any witnesses who testified he was not at the scene of the crime. Hence, appellee argues there was nothing to rebut. Appellee argues his defense was simply to comment on the weaknesses of the State's case and to question the credibility of its witnesses.

Again, the failure of the court to admit the statements at this point in the trial must be shown to be an abuse of discretion. Under the circumstances of this case, abuse of discretion is not shown on this issue.

Appellant's final argument is the trial court erred in refusing to permit the State to reopen its case in chief for the purpose of introducing the defendant's prior statements after the court had ruled the polygraph examinations and results were inadmissible.

Permission for the State to reopen its case in chief is to be granted under Kansas law only within the sound discretion of the trial court. *State v. Braun*, 209 Kan. 181, 188, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972). At the close of the State's case, the appellee attempted to lay the necessary foundation for the introduction of the polygraph evidence. The court denied the admission, relying on *State v. Blosser*, 221 Kan. 59. In *Blosser* the Supreme Court rejected evidence concerning a polygraph examination since the instrument did not automatically and unerringly disclose a lie by the person being tested. Further, the *Blosser* court found the device cannot be said to be completely

accurate because of the human elements involved. Both the psychological and emotional makeup of the examinee and the competence of the examiner in conducting the test and evaluating the results affect the outcome of the examination. The trial court specifically held:

"It seems to the scientific community of polygraphers that lie detection has not advanced much since the 1976 case of State versus Blosser; that the two basic areas that had to be resolved in that opinion of the Supreme Court have not, as yet, been resolved, though those findings by the Supreme Court still stand in today's modern polygraph society, so the Motion of the defendant to admit the lie detector test will be denied, based upon the evidence presented to me, and the Motion in Limine filed by the State as to block the defendant from offering any evidence concerning his passing of two lie detector tests will be sustained."

Appellant argues the court abused its discretion in not permitting the admission of appellee's statements without requiring the State to also agree to the admission of the polygraph results, when the court had clearly ruled the polygraph results themselves were not trustworthy and should not be permitted since an insufficient foundation had been laid for their admission. The dilemma which the State notes here that it was being forced to comply with was to agree to the admissibility of evidence the court found inadmissible in order to have admitted clearly admissible evidence—defendant's prior inconsistent statements.

Further, appellant alleges the court abused its discretion by finding the last statement made by the defendant to be "apparently truthful" since appellant had passed the polygraph examinations with that statement. This obviously ignores the court's finding that polygraphs are not sufficiently scientific to be able to show whether someone positively is telling the truth. Appellant argues the court demonstrated undue reliance upon the validity of the polygraph examination, exactly as a jury might be expected to do. One of the factors in disallowing polygraph evidence is the weight placed upon the evidence by the jury, which results in the jury function being usurped. See *State v. Nemechek*, 223 Kan. 766, 771, 576 P.2d 682 (1978).

Appellee argues it is important to note that the court did not deny the State permission to reopen its case in chief; rather, it ruled that if the State reopened its case and presented the statements, the polygraph evidence would also be admitted. Appellee reiterates that this ruling was proper because it does not go to the truthfulness of the statements, but rather to the

reason for defendant changing his statement. Reopening the State's case falls within the sound discretion of the trial court. The trial court abused its discretion in basing the denial on the polygraph issue.

Appellee also argues this appeal should not be allowed since this case has no precedential value. Appellee cites *State v. Glaze*, 200 Kan. 324, 436 P.2d 377 (1968), which states the reason the State is allowed to take an appeal from a question reserved under K.S.A. 22-3602(b)(3). In *Glaze* we stated:

"It is not the function of this statute to provide a means whereby the state may comb the record of trial in a criminal prosecution and have appellate review of every conceivable adverse ruling. Reserved questions will not be entertained merely to demonstrate whether or not error has been committed by the trial court in its rulings adverse to the state." pp. 324-25.

Appellee also cites *State v. Kopf*, 211 Kan. 848, 508 P.2d 847 (1973), for the authority that generally appeals by the State are only allowed on questions of statewide interest and usually they deal with the interpretation of statutes. We agree with appellee's statement of the law, but conclude this issue is of statewide interest.

Appeal sustained.

LOCKETT, J., concurring: I agree with the majority that the trial judge abused his discretion in making the admissibility of Martin's four prior inconsistent statements dependent upon also admitting the polygraph results. Such a requirement by the trial judge would evade our prior finding that polygraph tests are too unreliable to be admissible and that they tend to invade the province of the jury in determining that ultimate question of fact. The trial judge, in effect, was attempting to force the State to agree to the admission of the polygraph results in order to present Martin's four separate inconsistent statements to the jury.

Since Martin's last statement was given after he was advised that he had failed the first polygraph test, the fact that he had taken the polygraph test should have been admitted for the sole purpose of explaining why Martin had changed his fourth statement to the authorities. The results of the polygraph tests, however, were not admissible and those results could not be presented to the jury unless the parties voluntarily agreed that the results would be admitted into evidence.