No. 70,680

STATE OF KANSAS, *Appellee*, v. ARTIS SWAFFORD, *Appellant*.

 Modification of opinion, filed March 21, 1996. (For original opinion, see *State v. Swafford*, 257 Kan. 1023, 897 P.2d 1027 [1995].)

The opinion of the court was delivered by

DAVIS, J: Defendant Artis Swafford was convicted of felony murder and aggravated robbery. His convictions were affirmed in our original opinion filed June 13, 1995. *State v. Swafford*, 257 Kan. 1023, 897 P.2d 1027 (1995). On June 30, 1995, the defendant timely filed a motion for rehearing pursuant to Supreme Court Rule 7.06 (1995 Kan. Ct. R. Annot. 43).

Defendant Swafford was tried by jury in a joint trial with codefendants Juan Anthony and Joel D. Butler. During the trial, statements made by Anthony were introduced into evidence after being redacted to exclude the names of Swafford and Butler. We noted in the original opinion that "[w]hether editing a confession or statement by excision will avoid a violation of the *Bruton* [*v. United States*, 391 U.S. 123, 137, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968),] rule must be determined on a case-by-case basis." *State v. Swafford*, 257 Kan. at 1038. However, we stated:

"In this case . . . we are unable to determine whether the excised statement explicitly suggested the participation of Swafford because neither the excised version of the tape nor the excised transcript of the tape is included in the record on appeal. An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, a reviewing court presumes that the action of the trial court was proper. [Citation omitted]." 257 Kan. at 1038-39.

After our decision in this case, the defendant filed a motion for rehearing asking that this court reconsider the question of Anthony's redacted statement on its merits. Defendant also filed a motion to add to the record State's exhibits number 84 (videotape), 85 (audiotape), and 86 (redacted transcript of Anthony's statement). In her motion for rehearing, counsel acknowledges that it was an oversight not to insure that the exhibits were a part of the record on appeal but contends that the oversight was reasonable. She,

along with counsel for the State and Butler's counsel, was under the impression that Exhibit 86 had been made a part of the record on appeal..

There was confusion concerning Exhibit 86. In support of the motion to add to the record on appeal, counsel attached an affidavit of the Saline County deputy district court clerk. The deputy clerk acknowledged that it was the policy of the clerk to send all paper exhibits to the appellate courts when sending the record forward. Had this policy been implemented, the redacted transcript of Anthony's statement would have been included in the record on appeal.

*It is apparent that counsel for defendant, as well as counsel for Butler and counsel for the State, relied upon the original record in preparing for this appeal. At that time, the missing exhibits were included in the record. These exhibits were used by all parties and referred to by all parties in preparation of their briefs on appeal.*

We decided this case on June 13, 1995. The deputy clerk in her affidavit noted that as of June 29, 1995, the clerk's office had not been able to locate the redacted transcript of codefendant Anthony's statement. Apparently this exhibit was mailed to a party by the clerk's office and later returned by that party to the clerk's office. In response to the defendant's motion for rehearing and his request for additions to the appellate record, this court on August 30, 1995, entered the following order:

"The Clerk of the Saline District Court is hereby ordered to transmit exhibit 84 (video tape), exhibit 85 (audio tape), and exhibit 86 (transcript) to the Clerk of the Appellate Courts."

*We adhere to the well-established rule that an appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails. However, because the record used by the parties to prepare their appeal to this court contained the missing exhibits and because of the real confusion based on the clerk's actions in this case,* we now grant the defendant's motion for additions to the appellate record. Exhibit 84 (videotape), Exhibit 85 (audiotape), and Exhibit 86 (transcript) all relating to Anthony's statement ad-

mitted into evidence in the joint trial, are hereby made a part of the appellate record in this case.

In the motion for rehearing, the defendant's counsel argued that this court was provided with sufficient facts to allow it to review the merits of the defendant's contention that the admission of the redacted statement violated *Bruton*, 391 U.S. 123. We do not deem it necessary to hear further argument or to grant appellant additional time to respond. Counsel correctly points out that the issue was briefed by both parties and argued before this court.

The issue we now address is the same one involving the missing exhibit in our original opinion. As noted in our original opinion:

"Swafford . . . complains of the admission of the excised videotape of Anthony's statements to Lamar Williams. He argues that even though his name is edited from the videotape, the tape still clearly implicates him in the crime. The State, on the other hand, argues that because Swafford did not object to the playing of the tape, he has waived consideration of this issue." 257 Kan. at 1038.

The Confrontation Clause of the Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees the right of a criminal defendant to be confronted with the witnesses against the defendant, including the right to cross-examine those witnesses. *Richardson v. Marsh*, 481 U.S. 200, 206, 95 L. Ed. 2d 176, 107 S. Ct. 1702 (1987). An accused's right to confrontation is violated when the confession of a codefendant implicating the accused is received in evidence in a joint trial. *Bruton*, 391 U.S. at 137; *State v. Rodriguez*, 226 Kan. 558, Syl. ¶ 1, 601 P.2d 686 (1979). However, the extrajudicial statement of a nontestifying codefendant may be admitted into evidence if it is redacted to eliminate inculpatory references to the other defendant unless the redaction distorts the statement. *State v. Rakestraw*, 255 Kan. 35, Syl. ¶ 2, 871 P.2d 1274 (1994).

We have held that redaction of a confession is proper if any suggestion of a codefendant's involvement in the crime charged can be eliminated from the statement, but generally an edited statement should not be admitted if it explicitly suggests the participation of the complaining defendant. *State v. Hutchison*, 228 Kan. 279, 282, 615 P.2d 138 (1980). As we stated in *State v. Porter, Green & Smith*, 228 Kan. 345, 350, 615 P.2d 146 (1980):

"It is unreasonable to assume that in all cases the mere deletion of a defendant's name from a codefendant's incriminating statement is going to protect the complaining defendant from being implicated in the minds of the jury, when the statement refers to other participants in the crime and the other defendants are sitting at the same counsel table charged with the same crimes."

In this case, Anthony's statement constituted a confession to the crimes charged. He admitted killing the night clerk at the Mid-America Inn in Salina and taking money from the motel safe during the early morning hours of August 10, 1992. While in his statement he claimed sole credit for killing the night clerk, he mentions the names of the defendant and Butler as participants with him in the crimes charged. Prior to trial, the defendant and Butler had moved for separate trials based in large part on Anthony's statement. The motion was denied based upon the court's ruling that it would handle this problem by redaction of Anthony's statement.

The videotape played before the jury was a typed transcript of the conversation (confession) between codefendant Anthony and Lamar Williams with the names of the defendant and Butler redacted. The text was in white lettering against a blue background. At the same time the jury was viewing the video transcript, an audio recording of the conversation was played to the jury. While the State possessed a videotape of the Lamar Williams-Anthony conversation, its quality was poor and this video was not shown to the jury.

In *Swafford*, 257 Kan. at 1039 we noted:

"At trial, Swafford made no objection to the admission of the excised audiotape and videotape, and the jury was specifically instructed not to consider Anthony's statement against Swafford. While Swafford did object to the transcript of the excised tape, it was only because he felt that the original tape was unclear in some areas and doubted the accuracy of the transcript."

In his motion for rehearing, the defendant contends that the record supports a conclusion that he objected at trial to the admission of Anthony's statement on the basis of *Bruton*. At the very least, he contends, even if the issue was raised for the first time on appeal, under our decision of *State v. Puckett*, 230 Kan. 596, Syl. ¶ 1, 640 P.2d 1198 (1982), the interests of justice warrant review.

The record in this case is clear. The defendant did not object to the admission of Anthony's confession at trial on the grounds raised on appeal or in his motion for rehearing. Moreover, the defendant did not object to the method of redaction used. The names of the defendant and Butler were deleted from Anthony's confession, but blank spaces with underlining were left. This method of redaction chosen in this case presents a serious constitutional problem under the Sixth Amendment to the United States Constitution.

In the case of *United States v. Lane,* 883 F.2d 1484, 1501 (10th Cir. 1989), the court found that there was no *Bruton* error based primarily on the fact that the defendant had stipulated to the specific form of redaction. In addition, the court added that the defendant failed to object to the admission of the statement at trial. Thus, after concluding that the admission of the statement did not constitute plain error, the court affirmed. While the failure to object to the form of redaction or stipulating to the form of redaction may not preclude a claim of error on appeal in this case, the record must be viewed with this fact in mind.

Counsel suggests that because the alleged error is one of constitutional magnitude, we should, in the interest of justice, disregard not only the failure to object to the admission of the confession into evidence, but also ignore the failure of the defendant to object to the method of redaction. We note that had an objection been made at the time, further action could have been taken to explore other forms of redaction which would have been less suggestive with reference to the ultimate question of whether the defendant participated in the crimes charged. Under the circumstances of this case, it may very well be said that the defendant waived his constitutional right of confrontation based on his failure to object to the admission of Anthony's confession in its redacted form and further based on his failure to object to the form of redaction. However, because we deal with the defendant's Sixth Amendment right of confrontation, a fundamental consideration in determining whether the defendant received a fair trial, we elect to resolve the question on its merits.

*Bruton,* decided in 1968, held that in a joint trial, the admission of a nontestifying codefendant's extrajudicial statement implicating

the defendant violates the defendant's rights under the Confrontation Clause even if the judge instructs the jury to disregard the statement in determining the defendant's guilt or innocence. 391 U.S. at 126. (See Williams, *The Honest Consequences of Bruton and the Dishonest Consequences of the Redaction Exception*, 28 Crim. L. Bull. 307, for a comprehensive treatment of the redaction problem under *Bruton*). The Supreme Court concluded that the nature of some evidence is so "powerfully incriminating" that it overrules the prevailing presumption that a jury will follow instructions:

"[S]ome contexts in which the risk that the jury will not, or cannot, follow instructions is so great and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [Citations omitted.] Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." 391 U.S. at 135-36.

While the conversation between Lamar Williams and Anthony is not a typical post-arrest confession, *Bruton* applies to any extrajudicial statement by a nontestifying codefendant. *Bruton* applies to a statement made in a noncustodial setting as well to a statement made to other coconspirators if, as in this case, such statement is not made during the life of, and in furtherance of, the conspiracy. When the statement incriminates the defendant and the defendant is not able to cross-examine the declarant, the admission of the statement violates the Confrontation Clause. See *United States v. Avery*, 760 F.2d 1219, 1223 (11th Cir. 1985), *cert. denied* 474 U.S. 1055 (1986).

In the case of *Richardson v. Marsh*, 481 U.S. 200, the United States Supreme Court acknowledged that by redacting an incriminating statement made by a defendant, the government may be able to convert a statement from one that violates the *Bruton* rule to one that passes the *Bruton* test. The Court expressly authorized redaction as an exception to *Bruton*, holding that the admission of a nontestifying codefendant's statement into evidence at trial does not violate the Confrontation Clause if the court gives a proper limiting instruction and redacts the codefendant's statement to

eliminate not only the defendant's name, but any reference to his or her existence. 481 U.S. at 211. The Court further held that even though such statement incriminates the defendant when linked with other evidence admitted during the trial, this inferential incrimination does not make an otherwise admissible statement inadmissible so long as the statement is not incriminating on its face. See 481 U.S. at 208-11.

Although we believe that the resolution of the question is a close one, we conclude for the reasons set forth below that the admission of Anthony's confession into evidence under the facts of this case violated the constitutional principles set forth in *United States v. Bruton.* The question is a close one because Anthony's statement, standing alone, does not appear to directly incriminate the complaining defendant and Butler. On its face, the statement removes the names of the defendant and Butler. However, the method of redaction in this case, that is, by simply leaving a blank space in place of the names removed, makes it obvious to the jury that the statement was redacted and that the nontestifying defendant knows the true identity of the person or persons referenced in the statement.

The object of redaction is not only to eliminate the name of the defendant, but also to eliminate any reference to his or her existence. See *Richardson v. Marsh,* 481 U.S. at 211. While there may be an argument that the method chosen in this case eliminated any reference to the defendant's and Butler's existence, the blank spaces with underlining suggested that others participated in the crimes charged. All three were tried jointly for the crimes charged. Without the benefit of any other evidence, the blanks suggested to the jury that the others were the defendant and Butler. For these reasons we conclude that *Bruton* was violated.

Had another method of redaction been chosen, the result might have been different. For example, had the statement been redacted to remove the defendant's and Butler's names and all reference to their existence by removing a sentence or paragraph where their names appear so as not to leave blanks, the result might have been different. The question to be asked in each case is whether the redacted statement admitted eliminated not only the defendant's

name, but also any reference to his or her existence. If the codefendant's redacted statement, standing alone without consideration of any other evidence, does not directly incriminate the complaining defendant, *Bruton* is not violated even when other admissible evidence indirectly implicates the defendant.

Our conclusion that *Bruton* was violated does not mandate reversal, for a *Bruton* violation is subject to the harmless error rule of *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967). See *Harrington v. California,* 395 U.S. 250, 254, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969). In *Schneble v. Florida,* 405 U.S. 427, 430, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972), the United States Supreme Court stated: "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." This court has said that an error of constitutional magnitude, though serious, may be held harmless if the appellate court is willing to declare beyond a reasonable doubt it had little, if any, likelihood of changing the result of the trial. *State v. Johnson-Howell,* 255 Kan. 928, 944-45, 881 P.2d 1288 (1994).

Anthony's conversation with Lamar Williams amounts to a confession to the robbery and the brutal murder of a motel night clerk. Anthony makes it clear in his statement that he and he alone murdered the night clerk. The blank spaces and sentences in which they appear suggest that others participated in the crimes charged. The question in our harmless error analysis is, then, what other evidence in the record establishes that the defendant and Butler participated in the crimes charged.

The following evidence, properly admitted during trial, bears upon the question of the defendant's participation in the crimes charged. The jury was informed through the testimony of Renee Greer that on the night the robbery and murder were committed, Anthony told her that he, Butler, and Swafford were going to rob a motel and kill the night clerk by shoving a sharp object down the night clerk's throat. Greer testified that Anthony showed her the key they were going to use to get into the motel. Before Anthony

left for the robbery, she saw some walkie-talkies and Anthony showed her a sharp object which looked like a nail file. However, she testified that the object was not the letter opener found in the victim's body.

Greer's conversation with Anthony occurred at approximately 2:30 a.m. on August 10, 1992, the morning of the robbery and murder. Witnesses for the State established that Oliver Bigler, the night clerk at the Mid-America Inn, was alive at 2 a.m. The motel was robbed and Bigler was murdered during the early morning hours of August 10, 1992. The police arrived at the scene at 5:30 a.m., discovering the robbery and Bigler's murder. An autopsy performed on Bigler's body indicated that Bigler had suffered severe trauma to the head as well as severe stab wounds and lacerations including a stab wound in the right ear canal.

The morning after the robbery and murder, the police searched Anthony's residence and found a battery-operated walkie-talkie inside an empty dog food bag in a trash can. The antenna of the walkie-talkie had been broken off. The walkie-talkie's casing was broken and there were hair and carpet fibers on it. An expert testified that the antenna piece found at the crime scene matched the piece of the antenna found on the walkie-talkie in Anthony's trash can.

Prior to the robbery and murder, Anthony had a conversation with police informant Lamar Williams. Williams testified that Anthony asked him to participate in the robbery. Williams was acquainted with the defendant and Butler. Anthony told Williams he was going to rob the motel, that Swafford was going to knock out the clerk, and that he, Anthony, was going to slit the clerk's throat.

Williams also talked with the defendant about Bigler's murder. When Williams asked the defendant about the murder, the defendant said, "He was old, he was going to die anyway." When Williams told the defendant that Anthony had told him all about the murder, the defendant said, "Juan talked too much." In discussing the murder with Williams, the defendant also stated, "Man, we went up to that motherfucker—and the dude wouldn't give up so we had to fuck him up."

The same motel had been the subject of two previous robberies. The evidence in the joint trial suggested that the defendant was

the one who on one occasion attempted to rob the motel but was unsuccessful because the cash register could not be opened. On another occasion the robbery was successful. On both of these occasions the night clerk on duty was alone and the person entering had a key to the motel office. The clerk on duty identified the defendant at trial as the robber.

After each incident, the defendant appeared at Anthony's house and made reference to the clerk he robbed by asking how "the bitch" was. It was after the first attempt that Jennifer Harmon, a girl friend of Anthony's, told Anthony that the "room number" button had to be used to open the cash register. At the next robbery the robber had no difficulty opening the cash register.

Prior to the above two incidents, Harmon gave Anthony and Butler a ride to Junction City. On the trip, Anthony asked her to get him a copy of the keys to the motel. Butler also encouraged her to get the key for Anthony. Eventually, she agreed to leave the key where Anthony could pick it up and copy it. Chad Johnson, a worker at Alco, testified that during the summer of 1992, he had copied a key for Butler. A key was also used to gain entry to the motel on the night of the murder and robbery. Evidence suggested that the key used to gain entrance to the motel was the one Anthony showed to Renee Greer before leaving his residence at 2:30 the morning of the robbery, and the same one copied by Butler and used by the defendant during the two previous robberies.

We conclude that the admissible evidence other than Anthony's confession, including two direct statements that the defendant participated in the murder and the robbery, overwhelmingly establish that the defendant was a participant. The defendant's own statements to Williams clearly demonstrates that he participated with Anthony and Butler in the murder and robbery. Under these circumstances, we conclude that the admission of Anthony's confession was harmless error beyond a reasonable doubt. By this opinion we modify our previous opinion in *State v. Swafford*, 257 Kan. 1023, 897 P.2d 1027 (1995), and affirm.

Affirmed.