No. 89,651

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee,* v. P<small>ETER</small> J. D<small>AVIS</small>, *Appellant.*

(83 P.3d 182)

232

Opinion filed January 30, 2004.

*Forrest A. Lowry*, of Bezek, Lowry & Hendrix, of Ottawa, argued the cause and was on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: A jury convicted Peter J. Davis of first-degree murder, attempted first-degree murder, and conspiracy to commit first-degree murder. Davis appeals, raising three issues: (1) Was the defendant's right to a speedy trial violated? (2) Did the trial court err in refusing to sever the defendant's trial from that of his codefendants? (3) Was there sufficient evidence to support the jury's verdicts?

The facts of the case are more fully discussed in *State v. White*, 275 Kan. 580, 67 P.3d 138 (2003), in which this court affirmed the convictions of a codefendant, Michael White. The charges against Davis and White arose from two separate drive-by shootings, the first occurring on January 24, 2000, and the second on the afternoon of January 26, 2000.

The police investigation of the two shooting incidents eventually led to the custodial interrogations of Michael White, Shawndell Mays, Keith Mays, Peter Davis, and Carvell England on January 27, 2000. All of them talked to the investigators, describing the events of the two shootings to various degrees, with Shawndell Mays and White admitting to firing shots during both incidents and all of them admitting to being a witness to one or both occurrences. The redacted statements of each of the five codefendants were played for the jury over defense counsel's objections.

Davis admitted that he was driving the vehicle in which Shawndell Mays and White were riding when they fired shots during the second incident.

In the same information, the State charged White, Shawndell Mays, Davis, Keith Mays, and England with various charges relating to the shootings on January 24, January 26, or both. The five

codefendants' joint trial lasted nearly 3 weeks during which 39 witnesses testified. Generally, all of the defendants denied the allegations and, through cross-examination of the State's witnesses, sought to create reasonable doubt. They also generally relied upon a self-defense theory. Davis was not charged in the first shooting and presented evidence at trial that he was in custody when the first shooting occurred.

The jury convicted Davis of the first-degree murder of Christopher Union, the attempted first-degree murder of Lee Brooks, and conspiracy to commit first-degree murder. The jury acquitted Davis of criminal possession of a firearm. The jury also convicted Shawndell Mays and White of various charges but acquitted Keith Mays and England of all charges.

The trial court sentenced Davis to life imprisonment on the first-degree murder conviction, to 272 months' imprisonment on the attempted first-degree murder conviction, and to 117 months' imprisonment on the conspiracy conviction. The court ordered the first two sentences to run concurrently and the last sentence to run consecutively, for a controlling sentence of life (hard 25) plus 117 months' imprisonment.

Davis timely appeals. Our jurisdiction is under K.S.A. 22-3601(b)(1), conviction of an off-grid crime. We affirm.

*Issue 1: Was the Defendant's Right to a Speedy Trial Violated?*

Davis' first argument on appeal is that his right to a speedy trial was violated. K.S.A. 22-3402(1) provides that a person charged with a crime and held in jail solely because of that crime must be brought to trial within 90 days unless the delay is the result of the application or fault of the defendant or the trial court orders a continuance under subsection (3). Subsection (3)(c) provides that the time for trial may be extended under the following circumstances: "There is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days." K.S.A. 22-3402.

First, Davis complains that the trial court erred in granting the State's motion for a continuance because the State needed additional time to have its ballistics evidence evaluated. According to Davis, the State did not request the ballistics report until after the continuance was granted; therefore, the State's efforts to obtain material evidence were not reasonable pursuant to K.S.A. 22-3402(3)(c).

The State accurately points out that Davis' codefendant White made the same argument in his direct appeal. In *White*, we quoted the trial court's finding that material evidence was unavailable and that the State acted in good faith:

" 'If there's over a hundred pieces of ballistics evidence that needs to be examined, that's all very meticulous work, it's very time consuming. Unfortunately, the people that can do that are very few and far between, and it appears to me that there has not been any sort of delay that's caused simply for the purpose of delay, that [the State's] request is based upon a good faith basis.' " 275 Kan. at 600.

This court rejected White's argument, finding that the trial court did not abuse its discretion in granting the continuance. 275 Kan. at 600. Davis offers no reason why this court should change its previous ruling.

Next, Davis argues that, after the trial court granted the continuance, the court erred in calculating the new trial date. He contends that the trial court should have set the trial date 90 days from the date the continuance was granted rather than 90 days from the original trial date. Again, this court considered and rejected this argument in *White*, holding that "the 90-day period under K.S.A. 22-3402(3)(c) is counted from the date of the trial setting, not from the date on which the motion to continue was granted." 275 Kan. at 601. Davis' right to a speedy trial was not violated.

*Issue 2: Did the Trial Court Err in Refusing to Sever the Defendant's Trial from That of His Codefendants?*

Next, Davis argues that the trial court erred in denying his motion to be tried separately from his codefendants. Although codefendant White made a similar argument in his direct appeal, the basis of Davis' argument is different. White argued that the cod-

efendants had antagonistic defenses. While Davis relied, in part, upon that ground at trial as a basis for severance, he does not make that argument on appeal. Rather, on appeal, Davis contends that he was prejudiced by evidence regarding the first shooting which he argues was incompetent as to him because he was not charged in regard to that incident.

Davis filed a pretrial motion to sever on June 5, 2000. In that motion, Davis argued that his case was improperly joined with his codefendants' cases pursuant to K.S.A. 22-3202 and that it would prejudice him to be tried with codefendants who were charged in two murders, whereas Davis was charged in only one murder. After a hearing on June 1, 2000, the district court denied Davis' motion to sever "for the reasons set out more fully in the record herein." The record on appeal does not include a transcript of the June 1, 2000, hearing.

The State contends that Davis' failure to designate a sufficient record on appeal precludes meaningful review of this issue. The State cites *State v. Trotter*, 245 Kan. 657, 783 P.2d 1271 (1989), in support. In *Trotter*, the defendant filed a pretrial motion for separate trials pursuant to K.S.A. 22-3204, but he failed to include the transcript of the hearing on that motion in the record on appeal. Thus, the court could not determine whether the issue of misjoinder pursuant to K.S.A. 22-3202 was ever presented to the trial court. 245 Kan. at 658-59. The *Trotter* court held: "Failure to furnish a record showing that the issue of misjoinder under K.S.A. 22-3202 was raised before the trial court precludes consideration of that issue on appeal. A motion for separate trials made under K.S.A. 22-3204 is insufficient to raise a misjoinder issue under K.S.A. 22-3202." 245 Kan. 657, Syl. ¶ 1.

This case is distinguishable from *Trotter* in that, here, Davis' written motion clearly raised misjoinder pursuant to K.S.A. 22-3202 and requested a separate trial pursuant to K.S.A. 22-3204. On the record before us we are able to adequately review the claimed error.

K.S.A. 22-3202(3) provides:

"Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction

or in the same series of acts or transactions constituting the crime or crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

This court has interpreted the statute as follows:

"We conclude two or more defendants may be joined and tried together (1) when each of the defendants is charged with accountability for each offense included, or (2) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) when in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place and occasion that proof of one charge would require proof of the others.

"We further conclude if two or more defendants have been tried together and none of the requirements in the preceding paragraph have been met a misjoinder results and is an absolute ground for reversal and separate trials." *State v. Roberts,* 223 Kan. 49, 55, 574 P.2d 164 (1977).

In this case, Davis could not be joined under the first test enunciated in *Roberts.* Of the eleven counts in the third amended information, Davis was charged with murder of Union on January 26, attempted murder of Brooks on January 26, criminal possession of a firearm on January 26, and conspiracy to commit first-degree murder. Specifically, the conspiracy count alleged that Davis and his codefendants

"did agree with each other to commit a crime to wit: First Degree Murder, in violation of K.S.A. 21-3401, or to assist in committing said crime and did commit an over [*sic*] act in furtherance of such conspiracy, to wit: on both January 24, 2000, and January 26, 2000, got guns and loaded them, drove around looking for the intended victims (members of the Quinn family), and fired shots from their vehicles at other vehicles thought to have the intended victims (members of the Quinn family) inside, all in violation of K.S.A. 21-3302."

Other defendants were charged with murder, attempted murder, or criminal possession of a firearm arising out of the January 24 shooting, but Davis was not. Consequently, the first test of *Roberts* is not satisfied.

The State argues, however, that this case met both the second and third tests listed in *Roberts.* Clearly, as originally charged, the joinder was permissible under the second test enunciated in *Roberts* which recognizes that K.S.A. 22-3202 allows joinder "when

each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy." 223 Kan. at 55. In this case, all five codefendants were charged with conspiracy to commit murder and each defendant was charged with one or more crimes which constituted an overt act in furtherance of the conspiracy. White and Shawndell Mays were charged with committing overt acts on both January 24 and 26; the other defendants, including Davis, were charged with committing overt acts on January 26 only.

Our conclusion that joinder was proper under the conspiracy test is supported by the United States Supreme Court's decision in *Schaffer v. United States*, 362 U.S. 511, 4 L. Ed. 2d 921, 80 S. Ct. 945 (1960), in which the Court applied Rule 8 of the Federal Rules of Criminal Procedure to a fact pattern similar to this case. In one count, Schaffer and his codefendants were charged with transporting stolen ladies' and children's apparel. In two other counts, Schaffer was not charged, but other defendants were charged with similar movements of stolen goods. The final count charged all of the parties with conspiracy to commit the substantive charges alleged in the other three counts. A single trial was conducted. On appeal, the Supreme Court concluded that the joinder of all defendants in the same indictment was proper under Rule 8. 362 U.S. at 513.

In *Roberts* and subsequently, this court has stated that K.S.A. 22-3202 corresponds to Rule 8 and has found federal cases interpreting that rule to be persuasive. *State v. Moore*, 226 Kan. 747, 749-50, 602 P.2d 1359 (1979). Consistent with this, we find the Supreme Court's analysis in *Schaffer* to be persuasive and conclude that the initial joinder of the charges against Davis with the charges against the other defendants was proper since Davis was charged with conspiracy and all other counts were allegedly overt acts in furtherance of the conspiracy. Thus, the district court did not err in denying Davis' pretrial motion under K.S.A. 22-3202.

However, the case did not go to the jury with the allegation of a conspiracy which tied the events of January 24 and January 26 together. After the State rested, Davis and other defendants moved for a directed verdict of acquittal on the conspiracy charge. Davis'

counsel argued there was no evidence of a conspiracy and, more specifically, no evidence that Davis joined in a conspiracy during a time when he was in custody on January 24. In response, the State moved to amend the conspiracy charge so that it referred only to overt acts occurring on January 26 and not January 24. The trial court granted the State's request over defense counsel's objection, finding there was no evidence of conspiracy on January 24 but there was evidence of conspiracy on January 26. As the jury was eventually instructed, the conspiracy charge alleged that the five codefendants agreed to commit first-degree murder and committed an overt act in furtherance of that agreement on January 26. Thus, there was no longer even an allegation that Davis was tied to the January 24 crimes by the conspiracy.

A similar situation arose in *Schaffer* when the defendants moved for acquittal at the close of the government's case and the trial court dismissed the conspiracy count for failure of proof. Analyzing the issue of misjoinder when the conspiracy count no longer tied the counts together, the United States Supreme Court rejected a "hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law." 362 U.S. at 516. However, the Court held that, although there was not misjoinder under Rule 8, the trial judge has a continuing duty under Rule 14 of the Federal Rules of Criminal Procedure at all stages of the trial to grant a severance if prejudice appears, and should be especially sensitive to the possibility of such prejudice when the proof has failed on the charge that originally justified joinder. The Supreme Court found no prejudice to the petitioners in the case before it and upheld their convictions on the substantive counts. 362 U.S. at 516.

Following *Schaffer*, a good-faith test has emerged in the federal circuit courts of appeal: "[I]f the conspiracy charge was brought in good faith, dismissal of it does not require severance of the defendants, except on a showing of actual prejudice sufficient to satisfy Rule 14." 1A Wright, Federal Practice and Procedure: Criminal 3d § 144 (1999).

We adopt this view and hold that, if joinder was appropriate under K.S.A. 22-3202 and the joinder was made in good faith, an amendment to conform the charges to the evidence which removes

the basis for the joinder does not require reversal for misjoinder unless reversal would be required by K.S.A. 22-3204.

In this case, there is no allegation of bad faith. Thus, we must determine whether severance should have been granted under K.S.A. 22-3204, which states:

"When two or more defendant are jointly charged with any crime, the court may order a separate trial for any one defendant when requested by such defendant or by the prosecuting attorney."

In this case, although Davis did not specifically renew his motion to sever at the time the State moved to amend, he did so before the case was submitted to the jury. During a recess before closing arguments and after the jury had been instructed, Davis' counsel asked the court to dismiss the conspiracy count or direct a verdict on it. He also argued:

"[A]ll this information about the 24th came in which can prejudice my client when the jury decides the case against him. So I think—I think this case should have been severed for that reason, but at the very least I think the Court should not allow conspiracy upon an amended count after the fact to go to the jury."

The trial court, treating the motion as one to dismiss the conspiracy charge, denied the request.

Additionally, before trial, Davis requested severance under K.S.A. 22-3204. Then again, on a motion for new trial, Davis argued that he was prejudiced by the introduction of evidence relating to the January 24 shooting which could not have been introduced in evidence in a separate trial against him because the evidence would not have been relevant. Davis makes this same argument on appeal.

When applying K.S.A. 22-3204, this court has stated that severance should be granted when it appears necessary to avoid prejudice and ensure a fair trial to each defendant. *State v. Aikins*, 261 Kan. 346, 360, 932 P.2d 408 (1997). Severance pursuant to K.S.A. 22-3204 lies within the sound discretion of the trial court. *State v. Hunter*, 241 Kan. 629, 633, 740 P.2d 559 (1987). The trial court's denial of severance will be reversed only when a clear abuse of discretion is established. *State v. Van Pham*, 234 Kan. 649, 653, 675 P.2d 848 (1984).

On several occasions, this court has listed several "factors to be considered in determining whether there is sufficient prejudice to mandate severance." *State v. Butler*, 257 Kan. 1043, 1063, 897 P.2d 1007 (1995), *modified on other grounds* 257 Kan. 1110, 916 P.2d 1 (1996). These factors include:

" ' "(1) that the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) *that evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury*; (4) that the confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants." ' " (Emphasis added.) 257 Kan. at 1063 (quoting *State v. Martin*, 234 Kan. 548, 549, 673 P.2d 104 [1984]).

Davis relies upon the third factor, emphasizing in his argument that there was evidence related to the first shooting which was not relevant to the second shooting or to establishing the conspiracy and which was arguably prejudicial, including the testimony of the victim who survived, the testimony of the witness who drove the mortally wounded victim to the hospital, and the testimony of the coroner who performed the autopsy. However, in conspiracy cases where the defendant is not charged with committing all overt acts in furtherance of the conspiracy, there will often be evidence admitted that might not be admitted if separate trials were conducted. Despite this, joinder is still permissible if not prejudicial.

Therefore, we must examine other considerations which weigh upon a determination of whether the trial court abused its discretion in deciding against severance. In *Schaffer*, the Supreme Court noted that the trial court had determined there was no prejudice. That was also the conclusion of the trial court in this case. In ruling upon Davis' motion for new trial, the district court stated: "I don't believe that if Mr. Davis would have been tried separately that the outcome as to him would have been any different."

Another consideration is whether the jury was instructed to consider each defendant and count separately. The United States Supreme Court in *Schaffer* noted that the trial court was aware of

the possibility of prejudice and in the charge to the jury outlined what evidence could and could not be considered regarding each count. Although the instructions in this case did not specifically identify evidence that could or could not be considered on each count, and such an instruction would have been preferable, the jury was instructed consistent with PIK Crim. 3d 52.07 that it should give separate consideration to each defendant and that any evidence limited to one defendant should not be considered as to any other defendant.

Federal courts have considered the fact a jury did not convict all defendants on all counts as evidence of the jury's ability to compartmentalize the evidence and charges against each defendant. See *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997) (denial of severance upheld because jury verdict acquitting 6 of 7 defendants on at least 1 count showed jury heeded limiting instruction); *United States v. Miranda*, 248 F.3d 434, 439 (5th Cir. 2001) (denial of severance upheld because jury's acquittal of one codefendant showed that jury could follow limiting instruction); *United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000) (denial of severance upheld because fact that jury found defendant not guilty on 10 counts and acquitted codefendants on other counts showed that jury was able to "sort out the issues").

Here, the jury found some defendants not guilty as to all charges. Davis himself was found not guilty on the charge of possession of a firearm. Thus, the jury was able to compartmentalize the evidence and charges against each defendant.

Additionally, the weight of the evidence against the defendant is relevant in determining if there was prejudice. See *Van Pham*, 234 Kan. at 653-54. The trial court concluded: "I think the evidence was clear as to what occurred in this particular case and Mr. Davis' involvement in those crimes with which he was convicted." Indeed, Davis' own statement to police, which, contrary to Davis' assertion, is included in the record on appeal, tied him to the shootings of January 26 through his admission that he was driving the vehicle from which White and Shawndell Mays fired the shots that hit the victims. These shootings and Davis' act of aiding and abetting were the basis of Davis' convictions for first-degree murder,

attempted first-degree murder, and conspiracy to commit first-degree murder.

Given this record, we cannot find that the trial court abused its discretion in refusing to sever the trials of the defendants. Since we have reached this conclusion we need not consider the third test stated in *Roberts*.

### Issue 3: Was There Sufficient Evidence to Support the Jury's Verdicts?

Finally, Davis contends that the evidence was insufficient to support the jury's verdicts. "When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

Davis correctly points out that very few of the witnesses in the trial mentioned his name or identified him in connection with the shooting of Union and Brooks. However, the testimony of Anthony Dantzler, who lived in a crack house where White sometimes stayed, connected Davis to the case. Dantzler identified Davis as one of several young men, including White, who came in and out of the house near the end of January 2000. Although Dantzler remembered the young men having guns, he could not recall whether Davis in particular had a gun. Dantzler testified that at one point when the young men came back to the house they were happy and jumping around. Dantzler heard something mentioned about a white truck. Union and Brooks were driving a white truck when they were shot.

Another housemate, Gary Hahn, also observed White and his "buddies" with guns at the house around the time of the shootings, although he did not specifically identify Davis. Hahn heard the group talk about going to do a hit before they left the house. When they returned, they were jumping up and down and laughing.

Finally, as discussed in the previous issue, the most important evidence came from Davis himself in his admission to police that

he was driving the vehicle in which White and Shawndell Mays were riding when they shot at the truck occupied by the victims. Davis claimed that the occupants of the truck shot first and that his passengers fired back in self-defense. However, the surviving victim, Brooks, testified that neither he nor the victim who died, Union, fired shots at anyone.

It was the role of the jury to weigh the credibility of Brooks' testimony versus Davis' statement. See *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). Viewed in the light most favorable to the prosecution, a rational factfinder could find that Davis participated as an aider and abettor in the shooting of Union and Brooks. The evidence was sufficient to support Davis' convictions.

Affirmed.